# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DIVISION 1181 A.T.U. – NEW YORK EMPLOYEES PENSION FUND and ITS TRUSTEES: MICHAEL CORDIELLO; NEIL STRAHL; JEAN-CLAUDE CALIXTE; DOMENIC GATTO; THOMAS JEMMOTT | ) ) ) ) ) ) ) ) |
| And | ) ) |
| DIVISION 1181 A.T.U. – NEW YORK WELFARE FUND and ITS TRUSTEES: MICHAEL CORDIELLO; NEIL STRAHL; JEAN-CLAUDE CALIXTE; DOMENIC GATTO; THOMAS JEMMOTT | ) ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| VARSITY BUS CO., INC., | ) ) |
| STANLEY BRETTSCHNEIDER, Individually, | ) ) ) |
| LISA BRETTSCHNEIDER, Individually, | ) ) ) |
| ANDREW BRETTSCHNEIDER, Individually, | ) ) ) |
| And | ) ) |
| ALISON BRETTSCHNEIDER, Individually, | ) ) ) |
| Defendants. | ) ) |

**CV 12 - 5039**

VITALIANO, J.

## COMPLAINT AND APPLICATION FOR INJUNCTIVE RELIEF

Plaintiffs Division 1181 A.T.U. – New York Employees Pension Fund and its Trustees

("Pension Fund"), and Division 1181 A.T.U. – New York Welfare Fund and its Trustees

1

("Welfare Fund") (collectively, the "Funds") complain of Defendants Varsity Bus Company, Inc. ("Varsity Bus") and Stanley Brettschneider, Lisa Brettschneider, Andrew Brettschneider, and Alison Brettschneider ("Individual Defendants") (together, "Defendants"), as follows.

## Introduction

1.     This is a dispute that centers around the payment of $2.62 million in delinquent contributions owed to the Funds for the pension and health benefits of the covered employees of Varsity Bus. The Funds' claim for delinquent contributions against Varsity Bus arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. §§ 1001 et seq. (1982), and the Labor Management Relations Act of 1948 ("LMRA"), 29 U.S.C. § 185. The Funds seek a judgment against Defendant Varsity Bus awarding delinquent contributions, interest, liquidated damages, attorneys' fees, audit fees and other costs (together the "Delinquencies") for failing to make required contributions to the Funds, multiemployer pension and health and welfare plans, pursuant to a collective bargaining agreement.

2.     The Funds further bring claims against the Individual Defendants for breach of contract and pursuant to the New York Fraudulent Conveyance Statute, N.Y. DEBT. & CRED. §§ 270 et seq.  The Funds seek specific performance of the Agreement, Promissory Note and Grant of Security Interest (the "Security Interest Agreement") signed by the Individual Defendants in which (1) Andrew Brettschneider and Alison Brettschneider, in their personal capacities as co-owners of certain real property, agreed to provide the Funds with a security interest on such property for the full amount of the Delinquencies and agreed to complete and/or execute such additional documentation needed to perfect such secured lien within 3 business days of the date of the Funds' September 11, 2012 request; and (2) Stanley Brettschneider and Lisa

Brettschneider, in their personal capacities as co-owners of certain real property, agreed to provide the Funds with a security interest on such property for the full amount of the Delinquencies and agreed to complete and/or execute such additional documentation needed to perfect such secured lien within 3 business days of the date of the Funds' September 11, 2012 request.

3.     The Funds further seek a Court Order to: (a) to restrain the Individual Defendants from disposing of personal and real property and other assets, except those checking and savings accounts into which wages are deposited that are necessary for the Individual Defendants' day to day living expenses, until the judgment is satisfied; (b) to set aside any and all transfers, by gift, rollover or any other method, of assets from each Individual Defendant's accounts of any type to any Individual Retirement Accounts ("IRA") or other retirement account or to any other person since June 1, 2012; (c) to restrain the Individual Defendants from encumbering the two real properties that are the subject of the Security Interest Agreement; (d) to restrain the Individual Defendants from encumbering any and all other real properties; (e) award the Funds' attorneys' fees; and (f) any other relief available to the Funds under the law.

**Jurisdiction and Venue**

4.     This Court has jurisdiction over this action under Sections 502(e), 502(f), and 4301(c) of ERISA, 29 U.S.C. §§ 1132(e), 1132(f), and 1451(c).   This Court also has supplemental jurisdiction over this action pursuant to 28 U.S.C. § 1367 and the doctrine of pendent jurisdiction because the state claims against the Individual Defendants and federal claims against Varsity derive from a common nucleus of operative facts.

5.     Venue lies in this Court under Sections 502(e)(2) and 4301(d) of ERISA, 29 U.S.C. §§ 1132(e)(2) and 1451(d), in that the Pension Fund and Welfare Fund each is

administered at its principal place of business at 101-49 Woodhaven Boulevard, Ozone Park, New York 11416.

**Parties**

6.      Plaintiff Division 1181 A.T.U. – New York Employees Pension Fund ("Pension Fund") is a multiemployer employee benefit plan within the meaning of Sections 3(3), 3(37), and 4001(a)(3) of ERISA, 29 U.S.C. §§ 1002(3), 1002(37), and 1301(a)(3), and a joint labor-management fund established pursuant to Section 302(c) of the LMRA, 29 U.S.C. § 186(c).  Its purpose is to provide pension and related benefits to the eligible employees of employers that contribute to the Pension Fund pursuant to various collective bargaining agreements with the Division 1181-1061 Amalgamated Transit Union (hereinafter the "Union").

7.      Plaintiff Trustees of the Pension Fund (collectively, the "Pension Fund Trustees") are fiduciaries of the Pension Fund within the meaning of Section 3(21) of ERISA, 29 U.S.C. § 1002(21).

8.      Plaintiff Division 1181 A.T.U. – New York Welfare Fund ("Welfare Fund") is a multiemployer employee benefit plan within the meaning of Sections 3(37) and 4001(a)(3) of ERISA, 29 U.S.C. §§ 1002(37) and 1301(a)(3), and a joint labor-management health and welfare fund established pursuant to Section 302(c) of the LMRA, 29 U.S.C. § 186(c).  Its purpose is to provide health and dental and related benefits to the eligible employees of employers that contribute to the Welfare Fund pursuant to various collective bargaining agreements with the Union.

9.      Plaintiffs Trustees of the Welfare Fund (the "Welfare Fund Trustees") (together with the Pension Fund Trustees, the "Trustees") are fiduciaries of the Welfare Fund within the meaning of Section 3(21) of ERISA, 29 U.S.C. § 1002(21).

10.     At all times pertinent to this action, Defendant Varsity Bus was an employer within the meaning of 29 U.S.C. §152(2) and Section 3(5) of ERISA, 29 U.S.C. § 1002(5), and was engaged in an industry affecting commerce, within the meanings of Sections 3(11) and (12) of ERISA, 29 U.S.C. §§ 1002(11) and (12). On information and belief, Varsity Bus is a New York corporation with a principal place of business at 626 Wortman Avenue, Brooklyn, New York.

11.     On information and belief, Stanley Brettschneider is a resident of the State of New York.

12.     On information and belief, Lisa Brettschneider is a resident of the State of New York and the wife of Stanley Brettschneider at all times pertinent to this action.

13.     On information and belief, Andrew Brettschneider is a resident of the State of New York and served as President of Varsity Bus at all times pertinent to this action.

14.     On information and belief, Alison Brettschneider is a resident of the State of New York and wife of Andrew Brettschneider at all times pertinent to this action.

### Factual Allegations

15.     At all times material to this action, Varsity Bus has employed employees represented for the purposes of collective bargaining by the Union, a labor organization representing employees in an industry affecting interstate commerce.

16.     At all times material to this action, Varsity Bus and the Union were parties to and bound by a collective bargaining agreement ("CBA"). The CBA obligates Varsity Bus to submit monthly contributions to the Pension Fund and to the Welfare Fund on behalf of covered employees and to submit monthly remittance reports to the Pension Fund and the Welfare Fund showing the employees covered by the CBA for the month.

17.     Under the CBA, Varsity Bus agreed to be bound by the Pension Fund's Agreement and Declaration of Trust ("Pension Fund Trust Agreement") and the Welfare Fund's Agreement and Declaration of Trust ("Welfare Fund Trust Agreement") (collectively, the "Trust Agreements"), under which each Fund is maintained, and the rules and regulations adopted by the Trustees under Trust Agreements.

18.     Pursuant to their authority under the Trust Agreements, the Trustees adopted the Policy for Collection of Delinquent Contributions (the "Collection Policy") for the Pension Fund and the Welfare Fund.

19.     The Trust Agreements and the Collection Policy require Varsity Bus to submit to periodic payroll audits by the Funds' auditors to verify that Varsity Bus's monthly reporting is accurate. The Trust Agreements and Collection Policy also provide that the employer is liable for paying delinquent contributions, interest on the contributions at the rate provided in the CBA, and payroll audit costs if the employer has underpaid during a twelve month period the lesser of $2,000 or 5 percent of the employer's annual contributions. In addition, under the Trust Agreements and Collection Policy, the employer may also be liable for liquidated damages and attorneys' fees and costs incurred in collecting the amounts due.

20.     Under the CBA, interest at the rate of eighteen (18) percent per annum shall be paid for delinquent contributions from the date due, except as to contributions due as a result of a payroll audit. In addition thereto, the reasonable cost of audit fees and attorney's fees and any amounts available under law necessary to effect collection shall be paid by the Employer.

21.     Under the CBA, delinquent contributions owed as a result of a payroll audit shall be charged interest at a rate of twelve percent (12) per annum if such amounts are paid within thirty (30) days from the date the payroll audit is provided to the Employer. If such amounts are not paid within thirty days from the date the payroll audit is provided to the Employer,

delinquent contributions owed as a result of a payroll audit shall be charged interest at a rate of eighteen (18) percent per annum from the original due date to the date of payment.

### A. Delinquent Contributions.

22.     For the period of May 1, 2012 to July 31, 2012, Varsity Bus owes $204,703.80 in delinquent contributions to the Pension Fund plus interest of 18 percent pursuant to the terms of the CBA and $804,357.23 in delinquent contributions to the Welfare Fund plus interest at a rate of 18 percent pursuant to the terms of the CBA.

23.     For the month of August, 2012, Varsity Bus owes an estimated $270,993.65 in delinquent contributions to the Welfare Fund, plus interest at a rate of 18 percent pursuant to the terms of the CBA.

24.     On or about September 12, 2012, the Funds completed a payroll audit for the period of July 1, 2003 to June 30, 2010 ("2010 Audit"). Under the 2010 Audit, Varsity Bus owes $533,658.90 in delinquent contributions to the Pension Fund and $369,344.38 in interest on these delinquent contributions accrued through September 30, 2012, and owes $73,818.62 in delinquent contributions to the Welfare Fund and $35,205.83 in interest on these delinquent contributions accrued through September 30, 2012. Varsity Bus also owes the payroll audit fees incurred by the Funds under the terms of the Collection Policy and the CBA. Varsity Bus has signed a tolling agreement with the Funds for any amounts owed under the 2010 Audit.

25.     In addition, on or about September 19, 2012, the Funds completed a payroll audit for the period of July 1, 2010 to March 31, 2012 ("2012 Audit"). Pursuant to the 2012 Audit, Varsity Bus owes an estimated $116,292.70 in delinquent contributions to the Pension Fund, $17,157.78 in interest on the delinquent Pension Fund contributions accrued through September 30, 2012, an estimated $178,417.15 in delinquent contributions to the Welfare Fund and $16,302.68 in interest on the delinquent Welfare Fund contributions accrued through September

30, 2012. The Funds also determined that Varsity Bus owes the payroll audit fees incurred by the Funds under the terms of the Collection Policy and the CBA.

26.     In addition, under the Security Interest Agreement and the terms of the CBA, Varsity Bus owes the Funds $198,237.38 in delinquent contributions for runs acquired by Consolidated Bus Company plus interest on the delinquent contributions as the rate of 18 percent provided in the CBA.

27.     Varsity Bus has not paid the amounts due to either the Pension Fund or the Welfare Fund in violation of ERISA, the CBAs and the Trust Agreements. The Delinquencies owed to the Funds in delinquent contributions, interest, liquidated damages, payroll audit fees and attorneys' fees and costs are estimated to be $2,620,000 through September 30, 2012.

**B.  Agreements Between the Funds and the Defendants.**

28.     On or about August 2012, the Funds became aware that Varsity Bus was in the process of selling its operations.

29.     On September 1, 2012, Varsity Bus and the Individual Defendants entered into a Security Interest Agreement with the Funds to address the timing of payment of the Delinquencies and any and all outstanding contributions owed by Varsity Bus to the Funds for work performed through August 31, 2012.

30.     Under the Security Interest Agreement, Varsity Bus agreed: (1) that it owes the above contributions to the Funds for the months of May through July 2012 and for the runs acquired by Consolidated Bus Co.; (2) to pay these delinquencies, plus interest, in accordance with an agreed payment schedule; (3) to forego any and all rights it has to challenge the amount of the delinquencies attributable to the months of May through July 2012 and for the runs acquired by Consolidated Bus Co. from Varsity Bus, except that the parties will in good faith negotiate a resolution on the interest to be charged on these delinquencies by September 30, 2012

and, if not mutually agreed upon, such interest rate will be subject to arbitration;  (4) to forego the right to challenge the amount of the estimated contributions for the month of August 2012 by failing to timely submit a challenge of such estimate by September 11, 2012.

31.     Under the Security Interest Agreement, for the 2010 payroll audit for the period July 1, 2003 through June 30, 2010, Varsity Bus acknowledged that it was determined to be liable for delinquent contributions in the amount of $1,012,027.50, which included 12% interest calculated through September 30, 2012 (but not including audit fees).

32.     Under the Security Interest Agreement, upon completion of the 2012 payroll audit for the period commencing July 1, 2010 through March 31, 2012, the Funds and Varsity Bus agreed to engage in good faith negotiations to come to a mutually agreeable resolution on the amounts owed under both payroll audits within 4 weeks. The 2012 payroll audit was completed September 19, 2012.

33.     If the parties cannot come to a mutually agreeable resolution on the August 2012 contributions and/or interest on the delinquent contributions or the payroll audits, the parties agree to voluntarily submit to arbitration, pursuant to the rules set forth in the Employer's CBA with the Union, to resolve the amounts owed.

34.     Varsity Bus agreed to pay to the Delinquencies to the Funds pursuant to a payment schedule to be negotiated by the Funds and Varsity Bus and finalized no later than September 30, 2012.

35.     Under the Security Interest Agreement, Varsity Bus agreed that, with any agreement in which Varsity Bus sells all or a portion of its assets to a third party, the sales agreement will require the third-party buyer to pay all acquisition costs (defined as the purchase price paid by the third party for the sale of any assets of Varsity Bus, including but not limited to the sale of Department Of Education bus routes and/or bus vehicles, no matter how their value is

characterized, and only excluding any amounts paid to lenders to satisfy outstanding liens on the bus vehicle assets sold) directly to the Funds.

36. Upon the occurrence of a default under the Security Interest Agreement, Varsity Bus irrevocably authorized and empowered any attorney of any court of record of the State of New York, or elsewhere, including any United States District Court, to appear for and to enter and confess judgment against Varsity Bus, at any time or times and as of any term, for the principal amount of this Agreement, with or without declaration and without stay of execution, together with interest and costs including reasonable attorneys' fees. Varsity Bus waived all present and future laws relating to exemption, appraisement or stay of execution.

37. Under the Security Interest Agreement, Individual Defendants Andrew Brettschneider and Alison Brettschneider, in their personal capacities as co-owners of the certain real property, provided the Funds with a security interest on such property for the amount of the Delinquencies and agreed, to the extent there is additional documentation required by New York state law that the Funds must file to perfect its secured lien on this property, Individual Defendants Andrew Brettschneider and Alison Brettschneider agreed to complete and/or execute such additional documentation within 3 business days of the date of the Funds' request.

38. Under the Security Interest Agreement, Stanley Brettschneider and Lisa Brettschneider, in their personal capacities as co-owners of the certain real property, provided the Funds with a security interest on such property for the amount of the Delinquencies. To the extent there is additional documentation required by New York state law that the Funds must file to perfect its secured lien on this property, Individual Defendants Stanley Brettschneider and Lisa Brettschneider agreed to complete and/or execute such additional documentation within 3 business days of the date of the Funds' request.

39.     On September 11, 2012, the Funds sent the additional mortgage documents necessary to perfect the Funds' security interest on the properties.   Under the terms of the Security Interest Agreement, the Defendants were to execute these documents by September 14, 2012 (within 3 business days of the date of the Funds September 11, 2012 request).

40.     Despite their agreement to do so on September 1, 2012, the Individual Defendants did not execute the additional documents by the September 14, 2012 deadline as each agreed in the Security Interest Agreement. Instead, on or about September 13, 2012, the Individual Defendants through Individual Defendant Stanley Brettschneider expressed concern about a $58,000 filing fee and their additional legal expenses of reviewing and providing the documents in connection with perfecting the Funds' liens.

41.     In response to Defendants' concerns about the mortgage filing fee tax, on September 13, 2012, the Funds offered to advance the $58,000 filing fee and collect it with the balance of the Delinquency.  On that same date, through Fund counsel, the Funds discussed the possibility of a personal guaranty in lieu of a security interest on the real properties with Individual Defendant Stanley Brettschneider.

42.     Despite the Funds' offer to accommodate the Defendants' concerns by advancing the $58,000 filing fee tax, the Individual Defendants continued to refuse to execute the previously promised security interest documents.

43.     In attempt to secure the Individual Defendants' obligations to the Funds without even further delay, by email on September 14, 2012, the Funds then proposed a personal guaranty in place of the security interest on the two real properties under the following conditions: (1) Varsity Bus would immediately provide the Funds with copies of the sale agreements to establish that the purchasers of Varsity Bus's assets will pay the Funds directly (as

11

required by Security Interest Agreement) and the amount that the Funds will receive directly; (2) the four Individual Defendants would immediately provide evidence of liquid assets (e.g., brokerage or bank account statements) with sufficient assets to cover 115 percent or more of the Delinquencies; (3) the personal guaranty would be signed by the four Individual Defendants within 48 hours of being presented to them; (4) the guaranty would designate the financial institutions identified in 2 above and would provide that the Brettschneiders agree (a) not to make any withdrawals from those accounts until the Delinquencies are satisfied; and (b) to direct those financial institutions to provide any documentation and information requested by the Funds to confirm the amount of the accounts at any time and that no withdrawals have been made; and (c) if those accounts no longer hold sufficient assets to cover 115 percent of the Delinquencies, the four Individual Defendants would immediately provide information on additional accounts until the 115 percent target is met, which accounts and financial institutions will be also subject to all the conditions; (5) the four Individual Defendants would sign any separate documents necessary to (a) direct such financial institutions to provide any documentation and information requested by the Funds to confirm the amount of the accounts at any time and that no withdrawals have been made; and, (b) to the extent possible, direct those financial institutions not to permit any withdrawals until they have been notified by the Funds that the guaranty is no longer effective.  Once all the documents are provided, the personal guaranty signed and all conditions met, the Funds would revise the Security Interest Agreement to substitute the personal guaranty for the property lien.

44.     By email on September 21, 2012, the Funds provided the documents for the personal guaranty as an alternative to a property lien, with the condition that an interim personal guaranty ("Interim Guaranty") be put in place immediately, and that a final personal guaranty ("Personal Guaranty") with the conditions outlined in the September 14, 2012 email described

above be completed by October 1, 2012.  The email attached both an interim personal guaranty and a final personal guaranty for execution, and reiterated the conditions that the Individual Defendants immediately provide to the Funds copies of the sale agreements with third-parties to establish that the purchasers will pay the Funds directly as required by the Security Interest Agreement, and that the Individual Defendants immediately provide evidence of sufficient liquid assets to cover more than the estimated delinquency of $2.62 million.  The email also informed the Individual Defendants that if this is not accomplished by October 1, 2012, Fund Counsel had been directed to file a lawsuit against them to enforce the terms of the Security Interest Agreement.

45.     In discussions with the Funds, the Individual Defendants agreed to satisfy these conditions.  However, the Individual Defendants did not deliver the Interim Guaranty to the Funds until Friday September 28, 2012.  In that Interim Guaranty, the Individual Defendants each agreed to be personally liable to the Funds for the Delinquencies owed to the Funds.

46.     October 1, 2012 passed without the Individual Defendants signing the required final Personal Guaranty or complying with any of the other conditions of the September 14 and 21, 2012 emails.

## C. *Defendants' Breaches of the Agreements and Fraudulent Conveyances.*

47.     On October 2, 2012, Individual Defendant Stanley Brettschneider finally provided two of the three Varsity Bus sales agreements to the Funds.  For the first time, the Funds determined that Varsity Bus had violated the Security Interest Agreement because the agreements clearly fail to require third-party buyers to pay the Funds directly. On October 3, 2012, Individual Defendant Stanley Brettschneider provided a third Varsity Bus sales agreement to the Funds.  This agreement also violated the Security Interest Agreement in that it did not require the purchaser to pay the Funds directly.

48.     On October 3, 2012, one of the Individual Defendants, Stanley Brettschneider, provided documents for several of his brokerage and investment accounts that would be subject to the Interim Guaranty and the Personal Guaranty.  The account documents show that on September 14, 2012 the Individual Defendant Stanley Brettschneider transferred significant assets from brokerage and investment accounts to an Individual Retirement Account,("IRA") and other unknown accounts.

49.     To date, the Funds have not received account documents from any of the other Individual Defendants with the exception of one small account, and none of which provide evidence of liquid assets with sufficient assets to cover 115 percent or more than the Delinquencies.

50.     The final Personal Guaranty due October 1, 2012 has not been signed by the four Individual Defendants.

51.     The Individual Defendants have not provided documentation to the relevant financial institutions directing those financial institutions to provide any documentation and information requested by the Funds to confirm the amount of the accounts at any time and that no withdrawals have been made and to direct those financial institutions not to permit any

withdrawals until they have been notified by the Funds that the Personal Guaranty is no longer effective.

## COUNT I: FAILURE TO PAY DELINQUENT CONTRIBUTIONS TO THE PENSION FUND IN VIOLATION OF ERISA AND THE TRUST AGREEMENT
### (Defendant Varsity Bus)

52.     Plaintiffs incorporate each of the foregoing paragraphs as if set forth herein.

53.     By the foregoing conduct, the Defendant Varsity Bus has violated Section 515 of ERISA, 29 U.S.C. § 1145, and the Pension Fund Trust Agreement.

54.     Under Section 502(g)(2) of ERISA, the Pension Fund is entitled to recover the unpaid contributions, interest, liquidated damages, audit fees, attorneys' fees and other costs as part of its recovery for violations of Section 515.

55.     For the period of May 1, 2012 to July 31, 2012, Varsity Bus owes $204,703.80 in delinquent contributions to the Pension Fund, plus interest of 18 percent pursuant to the terms of the CBA.

56.     Pursuant to the 2010 payroll audit, Varsity Bus owes $533,658.90 in delinquent contributions to the Pension Fund and $369,344.38 in interest on these delinquent contributions accrued through September 30, 2012 and continuing. Varsity Bus also owes payroll audit fees under the terms of the Collection Policy.

57.     Pursuant to the 2012 payroll audit, Varsity Bus owes an estimated $116,292.70 in delinquent contributions to the Pension Fund and $17,157.78 in interest on these delinquent contributions accrued through September 30, 2012 and continuing. Varsity Bus also owes payroll audit fees under the terms of the Collection Policy.

58.     In addition, under the Security Interest Agreement and the terms of the CBA, Varsity Bus owes the Funds $198,237.38 in delinquent contributions for runs acquired by

Consolidated Bus Company plus interest on the delinquent contributions as the rate of 12 percent provided in the CBA.

59.     Under Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), the Trust Agreement, and the Delinquency Policy, the Pension Fund is entitled to liquidated damages on delinquent contributions in an amount equal to the greater of 20 percent of the delinquent amount or interest that has accrued on the Delinquency. Defendant Varsity Bus owes liquidated damages on all delinquent contributions.

60.     Under Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), the CBA, the Trust Agreement, and the Delinquency Policy, the Fund is also entitled to attorneys' fees incurred in collection of the unpaid contributions, as well as payroll audit and other costs.

## COUNT II: FAILURE TO PAY DELINQUENT CONTRIBUTIONS TO THE WELFARE FUND IN VIOLATION OF ERISA AND THE TRUST AGREEMENT
### (Defendant Varsity Bus)

61.     Plaintiffs incorporate each of the foregoing paragraphs as if set forth herein.

62.     By the foregoing conduct, the Defendant Varsity Bus has violated Section 515 of ERISA, 29 U.S.C. § 1145, and the Welfare Fund Trust Agreement.

63.     Under Section 502(g)(2) of ERISA, the Welfare Fund is entitled to recover the unpaid contributions, interest, liquidated damages, attorneys' fees, payroll audit and other costs as part of its recovery for violations of Section 515.

64.     For the period of May 1, 2012 to July 31, 2012, Varsity Bus owes $804,357.23 in delinquent contributions to the Welfare Fund plus interest at a rate of 18 percent pursuant to the terms of the CBA.

65.     For the month of August, 2012, Varsity Bus owes an estimated $270,993.65 in delinquent contributions to the Welfare Fund plus interest at a rate of 18 percent pursuant to the terms of the CBA.

66.     Pursuant to the 2010 payroll audit, Varsity Bus owes $73,818.62 in delinquent contributions to the Welfare Fund and $35,205.83 in interest on these delinquent contributions accrued through September 30, 2012 and continuing.  Varsity Bus also owes payroll audit fees under the terms of the Collection Policy.

67.     Pursuant to a payroll audit for the period of July 1, 2010 to March 31, 2012, Varsity Bus owes an estimated an estimated $178,417.15 in delinquent contributions to the Welfare Fund and $16,302.68 in interest on these delinquent contributions accrued through September 30, 2012 and continuing. Varsity Bus also owes payroll audit fees under the terms of the Collection Policy.

68.     In addition, under the Security Interest Agreement and the terms of the CBA, Varsity Bus owes the Funds $198,237.38 in delinquent contributions for runs acquired by Consolidated Bus Company plus interest on the delinquent contributions as the rate of 12 percent provided in the CBA.

69.     Under Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), the Trust Agreement, and the Delinquency Policy, the Welfare Fund is entitled to liquidated damages on delinquent contributions in an amount equal to the greater of 20 percent of the delinquent amount or interest that has accrued on the delinquency. Defendant Varsity Bus owes liquidated damages on all delinquent contributions.

70.     Under Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), the CBA, the Trust Agreement, and the Delinquency Policy, the Welfare Fund is also entitled to attorneys' fees incurred in collection of the unpaid contributions, as well as payroll audit and other costs.

### COUNT III: BREACH OF CONTRACT
### (All Defendants)

71.     Plaintiffs incorporate the foregoing paragraphs as if fully stated herein.

72. The Individual Defendants and Varsity Bus entered into the Security Interest Agreement with the Funds.

73. The Security Interest Agreement provides that the Individual Defendants will complete and execute the additional documents needed for the Funds to perfect their security interest in real property at two locations within three business days of the Funds' request.

74. The Funds presented the additional documents to the Individual Defendants on September 11, 2012. The Individual Defendants breached the Security Interest Agreement by failing to execute such documents on or before September 14, 2012.

75. The Security Interest Agreement provides that Varsity Bus will enter into a payment schedule with the Funds by September 30, 2012. The Security Interest Agreement also provides that, with any agreement in which Varsity Bus sells any of its assets to a third-party, the sales agreement will provide that third-party buyers must make payment of any amounts, other than amounts paid to lenders to satisfy outstanding liens, directly to the Funds.

76. Varsity Bus has not entered into a payment schedule by the September 30, 2012 deadline. Varsity Bus has entered into three sales agreements and none contain language that directs third-party buyers to pay the Funds directly. Varsity Bus breached the Security Interest Agreement by failing to include, in every agreement in which Varsity Bus sells any of its assets to a third-party, that third-party buyer must make payment of any amounts, other than amounts paid to lenders to satisfy outstanding liens, directly to the Funds.

77. The Funds seek specific performance of the Security Interest Agreement and request an order compelling (1) the Individual Defendants to complete and execute the documents needed for the Funds' to perfect their security interest in the real property at two locations and to pay such amounts as are due in connection with the perfection of the Funds' security interests; and (2) Varsity Bus to enter into a payment schedule with the Funds; and to

modify the agreements with third-party buyers so that the proceeds of asset sales will be paid directly to the Funds.

## COUNT IV: INTENTIONAL FRAUDULENT CONVEYANCE
### N.Y. DEBT. & CRED. LAW § 276
### (Individual Defendants)

78.     Plaintiffs incorporate the foregoing paragraphs as if fully stated herein.

79.     Individual Defendant Stanley Brettschneider has engaged in intentional fraudulent conveyance in violation of the New York Fraudulent Conveyance Statute, N.Y. Debt. & CRED. LAW § 276. Every conveyance made with actual intent to hinder, delay, or default either present or future creditors is fraudulent as to present and future creditors. N.Y. Debt. & CRED. LAW § 276.

80.     The other Individual Defendants have not provided any evidence of sufficient liquid assets as agreed under the conditions for the Personal Guaranty and the Funds are extremely concerned that the other three Individual Defendants currently are taking similar actions to effectuate intentional fraudulent conveyances of their personal assets.

81.     Each Individual Defendants is jointly and severally personally liable for $2.62 million owed by Defendant Varsity Bus to the Funds under the Interim Guaranty.

82.     Under the conditions for the Personal Guaranty, the Individual Defendants were required to designate assets in liquid accounts in excess of the amount of the Delinquencies.

83.     In the ninety day period preceding this Complaint, at least one Individual Defendant, Stanley Brettschneider, has engaged in at least three asset transfers from investment and brokerage accounts to either IRAs or unknown locations.

84.     IRAs are generally not accessible to creditors.

85.     At least one, and the most significant, of these asset transfers took place on September 14, 2012, while the Funds and the Individual Defendants were negotiating the

Personal Guaranty, thus demonstrating actual intent to hinder the Funds as creditors from collecting on the Interim Guaranty.

86.     **WHEREFORE**, the Funds request a judgment jointly and severally against the Individual Defendants in favor of the Funds and for entry of an order against each Individual Defendant to recover any and all assets transferred in violation of the New York Fraudulent Conveyance Statute, N.Y. DEBT. & CRED. LAW, § 276, and for all remedies including: (a) to restrain the Individual Defendants from disposing of any personal or real property or other assets, except those checking and savings accounts into which wages are deposited that are necessary for the Individual Defendants' day to day living expenses, until the judgment is satisfied; (b) to set aside any and all transfers, by gift, rollover or any other method, of assets from each Individual Defendant's accounts of any type to any IRA or other retirement account or to any other person since June 1, 2012; (c) to restrain the Individual Defendants from encumbering the two real properties that are the subject of the Security Interest Agreement; (d) to restrain the Individual Defendants from encumbering any and all other real properties; (e) award the Funds' attorneys' fees; and (f) any other relief available to the Funds under the law.

### COUNT V: CONSTRUCTIVE FRAUDULENT CONVEYANCE
### N.Y. DEBT. & CRED. LAW § 273
### (Individual Defendants)

87.     Plaintiffs incorporate the foregoing paragraphs as if fully stated herein.

88.     Alternatively to Plaintiffs' claim for intentional fraudulent conveyance, at least one of the Individual Defendants has engaged in constructive fraudulent conveyance in violation of the New York Fraudulent Conveyance Statute, N.Y. Debt. & CRED. LAW § 273. Pursuant to the New York Fraudulent Conveyance Statute, every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors,

without regard to his actual intent, if the conveyance is made or the obligation is incurred without fair consideration. N.Y. DEBT. & CRED. LAW § 273.

89.    The Individual Defendants jointly and severally have personally guaranteed the payment of the $2.62 million Delinquencies owed by Defendant Varsity Bus's $2.62 million to the Funds.

90.    At least one Individual Defendant, Stanley Brettschneider, has engaged in asset transfers from investment and brokerage accounts to IRAs and to unknown locations.    The transfers also are in violation of the annual limitations under Internal Revenue Code Section 408 on contributions to IRAs.

91.    IRAs are generally not accessible to creditors.

92.    On information and belief, the assets were not transferred in exchange for fair consideration.  On information and belief, these transfers will render the Individual Defendants unable to pay the $2.62 million owed to the Funds.

93.    Accordingly, pursuant to the New York Fraudulent Conveyance Statute, N.Y. DEBT. & CRED. Law § 273, Plaintiffs seek to recover assets transferred in violation of the New York Fraudulent Conveyance Statute, N.Y. DEBT. & CRED. Law, § 273, and for all remedies including: (a) to restrain the Individual Defendants from disposing of any personal or real property or other assets, except those checking and savings accounts into which wages are deposited that are necessary for the Individual Defendants' day to day living expenses until the judgment is satisfied; (b) to set aside any and all transfers, by gift, rollover or any other method, of assets from each Individual Defendant's accounts of any type to any IRA or other retirement account or to any other person within 90 prior to the filing of this complaint; (c) to restrain the Individual Defendants from encumbering the two real properties that are the subject of the Security Interest Agreement; (d) to restrain the Individual Defendants from encumbering any and

all other real properties; (e) award the Funds' attorneys' fees; and (f) any other relief available to the Funds under the law.

## REQUEST FOR PRELIMINARY INJUNCTION
### (Individual Defendants)

94.     Plaintiffs incorporate the foregoing paragraphs as if fully stated herein.

95.     Defendant Varsity Bus owes the Funds at least $2.62 million for the Delinquencies. The Individual Defendants have signed a Security Interest Agreement intended to provide the Funds' with a security lien on real property in two locations to secure payment of the Delinquencies. Individual Defendants Andrew Brettschneider and Alison Brettschneider agreed, as co-owners of certain real property, to provide the Funds with a security interest on such property for the amount of the Delinquencies and to execute such additional documentation to perfect the Funds' liens. Individual Defendants Stanley Brettschneider and Lisa Brettschneider agreed, as co-owners of certain real property, to provide the Funds with a security interest on such property for the amount of the Delinquencies and to execute such additional documentation to perfect the Funds' liens. Until such additional documentation is executed, the Funds are at risk that Individual Defendants will further encumber the properties for the benefit of themselves or other creditors.

96.     The Individual Defendants have also signed the Interim Guaranty agreeing to be personally liable for the Delinquencies owed by Defendant Varsity Bus to the Funds.

97.     Plaintiffs will likely suffer irreparable injury if the Court does not issue an Order immediately restraining the Individual Defendants from (1) disposing of personal and real property and other assets, except those checking and savings accounts into which wages are deposited that are necessary for the Individual Defendants' day to day living expenses, until the judgment is satisfied; and (2) encumbering real properties.

98.    At least one Individual Defendant has made transfers from investment and brokerage accounts during discussions with the Funds regarding the Personal Guaranty and may be in the process of further transfers beyond the reach of the Funds. Plaintiffs also will likely suffer irreparable injury if the Individual Defendants are not enjoined while this action is pending from encumbering the real properties referenced in the Security Interest Agreement, as well as any other real properties, before the Funds are able to perfect their liens.

99.    Accordingly, The Funds will suffer irreparable harm if the Individual Defendants are not enjoined disposing of personal and real property and other assets and encumbering real properties because, if such transactions occur, they will preclude the Funds from recovering the $2.62 million Delinquency from the Defendants.

100.    There is a substantial likelihood that the Funds will prevail on the merits. Varsity Bus has agreed that it owes and waived its right to contest a significant portion of the Delinquencies. The Funds' right to collect interest, attorneys' fees', audit fees and other costs under an action under ERISA Section 515 if delinquent contributions are owed is well established under law. The Individual Defendants have personally guaranteed payment of the Delinquencies and granted liens on real properties pursuant to the Security Interest Agreement. Varsity Bus has violated the terms of the Security Interest Agreement and entered into sale agreements with third parties that do not reflect the required terms.

101.    The harm faced by the Funds outweighs the harm that would be sustained by the Individual Defendants if the preliminary injunction is granted because the Individual Defendants have agreed in writing to be personally liable for the Delinquency, but are engaging in asset transfers that will prevent the Funds from recovering the Delinquency and may grant liens for the benefit of themselves or other creditors ahead of the Funds on the real property.

102.    The Funds seek an injunction to preserve the status quo: to enjoin encumbrances on real properties and to restrain the Individual Defendants from disposing of personal and real property and other assets, except those checking and savings accounts into which wages are deposited that are necessary for the Individual Defendants' day to day living expenses, in order to prevent the Individual Defendants from intentionally becoming judgment-proof.

103.    Issuing a preliminary injunction will not adversely affect the public interest. Rather, it is in the public interest to protect pension and welfare benefits of the Varsity Bus employees and allow the Funds to collect the Delinquencies.

104.    Plaintiffs are willing to post a bond, if any, required by the Court for the preliminary injunction.

105.    Plaintiffs request the Court set their application for preliminary injunction, filed concurrently with this action, for hearing at the earliest possible time and, after hearing the request, to issue a preliminary injunction against the Individual Defendants.

### Prayer for Relief

WHEREFORE, Plaintiffs request the following relief:

(1)    A judgment in favor of the Pension Fund against Varsity Bus for delinquent contributions; interest on that amount at the Funds' rate of 18 percent per year from the date due until the date paid or the date of judgment; liquidated damages in an amount that is the greater of 20 percent of the unpaid contributions or interest; audit costs; and the reasonable attorneys' fees and costs in this action;

(2)    A judgment in favor of the Welfare Fund against Varsity Bus for delinquent contributions; interest on that amount at the Funds' rate of 18 percent per year from the date due until the date paid or the date of judgment; liquidated damages in an amount that is the greater of

20 percent of the unpaid contributions or interest; audit costs; and the Welfare Fund's reasonable attorneys' fees and costs in this action;

(3)    Set aside any and all transfers, by gift, rollover or any other method, of assets from each Individual Defendant's accounts of any type to any Individual Retirement Accounts ("IRA") or other retirement account or to any other person since June 1, 2012;

(4)    Issue a preliminary injunction against the Individual Defendants restraining the Individual Defendants from (a) disposing of personal and real property and other assets, except those checking and savings accounts into which wages are deposited that are necessary for the Individual Defendants' day to day living expenses, and (b) encumbering real properties, until the judgment is satisfied;

(5)    Award the Funds' attorneys' fees and costs; and

(6)    Any other relief available to the Funds under the law.


October __9, 2012                              Respectfully Submitted,


                                              _Richard Brook_____
                                              Richard A. Brook
                                              MEYER, SUOZZI, ENGLISH & KLEIN, P.C.
                                              1350 Broadway, Suite 501
                                              New York, NY 10018
                                              (212) 239-4999 (telephone)
                                              (212) 239-1311 (facsimile)

                                              Barry S. Slevin
                                              Sharon M. Goodman
                                              Jeffrey S. Swyers
                                              SLEVIN & HART, P.C.
                                              1625 Massachusetts Ave., NW, Suite 450
                                              Washington, D.C.  20036
                                              (202) 797-8700 (telephone)
                                              (202) 234-8231 (facsimile)

                                              Counsel for the Plaintiffs